UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 12-5168-JGB (SSx)** | Date | January 27, 2015 |

Title *James Enstrom v. Thomas Rice, et al.*

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):     Attorney(s) Present for Defendant(s):

None Present                                           None Present

**Proceedings:**     **Order (1) GRANTING IN PART Defendant's Motion to Enforce Settlement Agreement and Re-open Case (Doc. No. 89); (2) GRANTING IN PART Plaintiff's Motion to Enforce Settlement Agreement (Doc. No. 88); (3) ORDERING Parties to File Stipulation and Order for Dismissal or Judgment by March 2, 2015; and (4) VACATING the February 2, 2015, Hearing (IN CHAMBERS)**

Before the Court are the parties' competing motions to enforce the settlement agreement. (Doc. Nos. 88 & 89.) The Court finds this matter appropriate for resolution without a hearing. See Local Rule 7-15; Fed. R. Civ. P. 78. After considering all papers timely filed in support of and in opposition to the motions, the Court GRANTS IN PART Plaintiff's Motion, GRANTS IN PART Defendant's Motion, and VACATES the February 2, 2015, hearing. The Court ORDERS the parties to file a proper stipulation and order for dismissal or judgment by March 2, 2015.

## I. BACKGROUND

Plaintiff James E. Enstrom ("Plaintiff") filed his initial Complaint on June 13, 2012, against numerous defendants. (Doc. No. 1.) Following proceedings unrelated to the current controversy, Plaintiff filed his Third Amended Complaint on March 27, 2013, alleging claims against Defendants Thomas Rice, Carole Goldberg, and Linda Rosenstock (collectively, "Defendants"). ("TAC," Doc. No. 40.)

On September 22, 2014, Magistrate Judge Suzanne H. Segal held a settlement conference with the parties. (Doc. No. 77.) The parties reached a settlement and recited its terms on the record. ("Transcript," Doc. No. 78.) Judge Segal ordered the parties to memorialize their settlement agreement in writing within the following several days and then file a stipulation to

dismiss the case within ninety days.  (Doc. No. 79.)  In light of the settlement, this Court placed the case on inactive status on October 31, 2014.  (Doc. No. 83.)  The Court also ordered the parties to file either a motion to reopen the case or a stipulation and order for dismissal or judgment by December 22, 2014.  (Id.)

On December 2, 2014, the parties filed a joint status report, informing the Court that a disagreement had arisen between the parties regarding certain terms of the settlement agreement and that Judge Segal had been unable to resolve the dispute.  (Doc. No. 87.)  They indicated their intention to file cross-motions to enforce the settlement agreement.  (Id.)  On January 5, 2015, Plaintiff filed a motion to enforce the settlement agreement.  ("Pl. Mot.," Doc. No. 88.)  That same day, Defendants filed their own motion to enforce the settlement agreement and re-open the case.  ("Def. Mot.," Doc. Nos. 89.)  On January 12, 2015, both parties opposed the other's motion.  ("Def. Opp'n," Doc. No. 90; "Pl. Opp'n," Doc. No. 91.)  Defendants filed their Reply on January 16, 2015, ("Def. Reply," Doc. No. 93), and Plaintiff replied on January 19, 2015, ("Pl. Reply," Doc. No. 94).

## II.  LEGAL STANDARD

Because of "the high judicial favor accorded the voluntary settlement of disputes," a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it."  In re City Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1994) (internal quotations omitted).  A settlement agreement must meet two requirements in order to be enforced.  First, it must be a "complete agreement."  Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir. 1994).  Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute.  See Harrop v. W. Airlines, Inc., 550 F.2d 1143, 1144–45 (9th Cir. 1977).  "A complete agreement requires: (1) accord on all 'material terms'; and (2) 'the intent of the parties to bind themselves.'"  Vasile v. Flagship Fin. Grp., LLC, No. 2:12–CV–02912–KJM–CKD, 2014 WL 2700896, at *1 (E.D. Cal. June 13, 2014) (quoting Callie v. Near, 829 F.2d 888, 891 (9th Cir. 1987)).

"Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."  Callie, 829 F.2d at 890 (citations omitted).  However, where the parties appeared in open court and placed the material terms of the settlement on the record, "there [i]s no need for an evidentiary hearing on whether an agreement exist[s] or what its terms [a]re: the parties dispelled any such questions in open court."  Doi v. Halekulani Corp., 276 F.3d 1131, 1138-39 (9th Cir. 2002).  In such cases, "the court is empowered summarily to require the parties to comply with their representations without holding a hearing."  Id. at 1139 (quoting Vari-O-Matic Machine Corp. v. N.Y. Sewing Mach. Attachment Corp., 629 F. Supp. 257, 259 (S.D.N.Y. 1986)).

## III.  DISCUSSION

The parties agree that they reached a settlement and entered into a binding oral agreement at the conclusion of the settlement conference on September 22, 2014.  (Pl. Mot. at 1; Def. Mot. at 3, 16.)  The material terms of that agreement were placed on the record, and the parties agree that the transcript from the settlement conference represents the complete terms of their

agreement. (Pl. Reply at 1; Def. Mot. at 16.) However, they seek clarification from the Court regarding a few of the nonmonetary terms that were placed on the record. (Pl. Mot. at 1-2, 12; Def. Mot. at 3-4.) They ask the Court to summarily enforce the settlement reached on September 22, 2014. (Def. Mot. at 4; Pl. Mot. at 12.)

### A. Telephone Number and Mailbox

When the parties recited their agreement on the record following the settlement conference, they included some "tentative" nonmonetary terms. (Transcript at 6-7, 17.) Among those terms were provisions for Plaintiff to maintain both his UCLA telephone number and his mailbox in the mail room. (Id. at 6-7.) Judge Segal explained on the record that Defendants' counsel needed to "investigate and confirm with the appropriate individual[,] just to confirm [that term]," but that Defendants "w[ould] try to arrange a mailbox space." (Id. at 7.) She granted Defendants seven days to "check on those additional terms" and "confirm what c[ould] be done." (Id. at 7-8.) Judge Segal explained to Plaintiff that "those are all tentative terms" and warned that Defendants' counsel might, for example, be unable to "deliver on the phone." (Id. at 17.) Nevertheless, Plaintiff agreed to be bound by the oral agreement and settle his case even though the tentative terms "could go against [him]." (Id. at 17-18.)

The parties now disagree regarding what it meant for the above terms to be "tentative." Plaintiff argues that Defendants' counsel needed to confirm only the "availability of mailbox space at the School of Public Health" as well as the availability of a UCLA telephone number. (Pl. Mot. at 5.) Plaintiff recognizes that the settlement "transcript represents the complete terms of settlement agreed upon by the parties." (Pl. Reply at 1.) In contrast, Defendants maintain that counsel needed to confirm "whether the appropriate [University] administrator felt it was appropriate to provide the non-monetary item to Plaintiff, a separated employee, and to exercise their discretion as to whether to authorize the use of University assets on a going forward basis." (Def. Mot. at 10.) Defendants thus argue that counsel needed "to obtain appropriate authority" for the specified items. (Id.)

The Court agrees with Defendants' interpretation of the recorded settlement agreement. Judge Segal explained on the record that the term at issue was whether Plaintiff "may *keep* his telephone number" and whether "[h]e may have space in the mail room mailbox *that he's had so far*." (Transcript at 7 (emphasis added).) Thus the recorded agreement makes plain that Plaintiff already had a telephone number and mailbox and that a telephone number and mailbox were thus available. Because it should have been apparent to counsel that the physical availability of a telephone and mailbox was not in question, it would have been nonsensical for the parties to allow those terms to remain tentative if all Defendants needed to confirm was such availability. A more logical interpretation of the recorded agreement is that Defendants were granted the opportunity to confirm that a telephone number and mailbox were authorized by the appropriate university administrator. For several reasons, and based on various UCLA policies, the administrators in question thereafter declined to allow for Plaintiff to maintain his telephone number and mailbox. (Def. Mot. at 9-10.)

Although Plaintiff appears to regret allowing the phone number and mailbox terms to remain "tentative" in the recorded settlement agreement, those terms indeed remained tentative,

and Defendants were permitted to thereafter decline to include them in the final, written settlement agreement. Therefore, the Court concludes that Defendants' version of paragraphs 2.E. and 2.F. of the settlement agreement is more appropriate. ("Def. Agreement." at 2-3, Declaration of Alan R. Zuckerman, Ex. B, Doc. 89-5.) Accordingly, the Court GRANTS Defendants' motion and DENIES Plaintiff's motion with respect to these settlement terms.

### B. Email Address

The parties also dispute whether the settlement agreement includes any limitation on duration for Plaintiff's use of his UCLA email address. At the September 22, 2014, settlement conference, the parties agreed on the record that Plaintiff could retain his UCLA email address; they did not specify any limitation regarding when Plaintiff's use of that email address would terminate. (Transcript at 6-7, 9-13.) Defendants now argue that the parties intended to limit the duration of Plaintiff's use of his UCLA email address, (Def. Agreement at 2), whereas Plaintiff insists that he is entitled to lifetime use of a UCLA email address, (Pl. Agreement at 2).

Defendants specifically contend that the final settlement agreement should include language that limits the length of time during which Plaintiff may continue to use his UCLA email address "for so long as [email services] are provided to retirees." (Def. Agreement at 2.) Defendants argue that, because Plaintiff will now be considered a "retired researcher," his email privileges should be limited to those privileges received by retirees. (Def. Mot. at 11-12.) However, no such limitation was discussed on the record at the settlement conference; the parties did not specify that Plaintiff would receive only those email privileges that are provided to retirees. In fact, only one aspect of Plaintiff's continued use of his email address was discussed on the record; Defendants explained UCLA's ongoing "campus-wide process" of converting B.O.L. email addresses to Gmail and informed Plaintiff that his email address would likely be converted as a part of that process but that Plaintiff would maintain his email address following the conversion. (Transcript at 9-10.) Defendants further explained that the change was being made department by department. (Id. at 10-11.) Following that explanation, Plaintiff expressed his understanding that his email address would only be subject to change if there was a university-wide change or a change that applied to the entire School of Public Health. (Id. at 10-11.) Thus, although the parties discussed the possibility of converting Plaintiff's email address, they did not provide for any limitation based on other retirees having continued email access.

Defendants also argue that they clearly could not have intended to agree that Plaintiff may maintain his email address for life, even if UCLA ceases to provide *any* email addresses; the cost of providing just a single email address would be prohibitive. (Def. Mot. at 12; Def. Opp'n at 5.) The Court does not consider it likely that UCLA will cease providing any email addresses but recognizes that Plaintiff's right to a continued UCLA email address would logically be contingent upon the existence of UCLA email addresses.

In sum, the Court concludes that Plaintiff's version of paragraph 2.D. of the settlement agreement is superior, except that one change is necessary; instead of receiving email services "for the remainder of his life," ("Pl. Agreement" at 2, Declaration of Carly F. Gammil, Ex. 5, Doc. No. 88-9), Plaintiff will be entitled to his email address for as long as UCLA provides email addresses to some members of the UCLA community. Accordingly, the Court GRANTS IN

PART Plaintiff's motion and DENIES Defendants' motion with respect to paragraph 2.D. of the settlement agreement.

### C. Additional Title from UCLA

The final dispute that the parties ask the Court to resolve is whether the settlement agreement bars Plaintiff from accepting any future employment from UCLA. While the parties were recording their settlement agreement on September 22, 2014, an issue arose as to whether anything in the agreement "would prevent [Plaintiff] from pursuing an application for emeritus status pursuant to UCLA policies." (Transcript at 13.) After discussing the matter off the record, the parties agreed to add an additional term to the agreement: "Dr. Enstrom will not seek any title in addition to the 'Retired Researcher' title." (Id. at 16.) Defendants now argue that the written settlement should provide that "Plaintiff will not apply for and, if offered, will not accept any employment or any other title other than "Retired UCLA Researcher." (Def. Mot. at 14.) In contrast, Plaintiffs maintain that the parties agreement regarding Plaintiff's title is limited to Plaintiffs promise not to *seek* an additional title. (Pl. Mot. at 11.)

The recorded settlement agreement specified only that Plaintiff would not "seek" an additional title; nothing on the record specified that Plaintiff should be barred from accepting an additional title if one was later offered to him. (Transcript at 13-16.) Although Defendants now argue that the written settlement agreement should include "boilerplate language customarily found in a [s]ettlement [a]greement," (Def. Mot. at 14), the Court sees no reason to insert such "boilerplate" now, after Defendants failed to specify such terms on the record at the settlement conference. Defendants insist that merely barring Plaintiff from *seeking* a title "is not the 'peace' that [D]efendants bought with their settlement funds nor is it what [P]laintiff agreed to on the record." (Def. Mot. at 12.) However, Defendants can only have "bought" the terms that were specified on the record, and Plaintiff never agreed to barring Plaintiff from *accepting* future employment. Although Defendants may now wish that they had specified such additional language, they failed to do so.

Accordingly, the Court concludes that Plaintiff's version of paragraph 11 of the settlement agreement, (Pl. Agreement at 5), is a more accurate written representation of the agreement reached on September 22, 2014, than the competing version submitted by Defendant, (Def. Agreement at 5-6). Therefore, the Court GRANTS Plaintiff's motion and DENIES Defendants' motion with respect to that settlement term.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendants' Motion and GRANTS IN PART Plaintiff's Motion. The parties shall include in their written settlement agreement the interpretation of the disputed terms that the Court has provided in this order. The Court ORDERS the parties to file a stipulation and order for dismissal or judgment by March 2, 2015, and VACATES the February 2, 2015, hearing.

**IT IS SO ORDERED.**